LUNT FARM COMPANY et al., Petitioners and Relators, v. D. W. HAMILTON, Judge, Respondent.

No. 42218.

OCTOBER 24, 1933.

McCoy & McCoy, for relators and petitioners.

W. H. Keating, and F. M. Beatty, for respondent.

KINDIG, J.— This certiorari proceeding is brought to test the power and jurisdiction of the district court in setting aside a dis-

missal of a cause of action therein and reinstating the same on the calendar. A partnership brought the action, and a purported dismissal was made by certain alleged partners. Consequently a question arises concerning the authority of such partners to make the alleged dismissal. If, as hereinafter more fully set forth, the alleged partners who attempted to make the dismissal did not have the authority to act for the partnership in the premises, the district court had jurisdiction and power to set aside the alleged dismissal and reinstate the cause. An elaborate statement of somewhat complicated facts is essential for a complete understanding of the precise questions under consideration.

On the 3d day of January, 1910, Henry W. Lunt, a widower, of Mahaska county, Iowa, conveyed to his trustees, Johnson R. Lunt, his son, and Cole R. Van Gordon, his son-in-law, certain real estate in Iowa and Missouri for the benefit of the trustor's children, Johnson R. Lunt, Walter L. Lunt, Willie C. Lunt, Elba Lunt Van Gordon, and Mattie Lunt Vernon (now Mattie Lunt Van Gordon). Of the trustees above named, Johnson R. Lunt, the trustor's son, was a beneficiary under the trust.

The trustees were given the right to manage and control the real estate, to the end that the same might be properly farmed and cultivated. From time to time the trustees were required to report to the trustor and beneficiaries, during the trustor's life, and thereafter such reports were to be made to the beneficiaries. Provision was made in the trust deed for the children of any beneficiary who might thereafter die.

During the trustor's lifetime he was to be supported from the proceeds of the trust. Trust moneys were to be invested and reinvested. Many other items of benefit not here mentioned were granted to the beneficiaries through the trust deed. Under the terms of the trust deed, the trust was to terminate at the death of the trustor's last surviving child. There is a further provision in the trust deed that if, at the trustor's death, any of his children have preceded him in death, the heirs or legal representatives of such deceased child or children shall have no voice in determining "this trust. That the same can only be determined by my surviving children with the consent of my trustees aforesaid."

At the time the aforesaid trust deed was executed, the beneficiaries thereunder, by contract among themselves and with the trustees, agreed to articles of copartnership for the purpose of manag-

ing the farming business contemplated by the trust deed. In these articles of copartnership, the trust deed is specifically mentioned, and the two instruments apparently become one contract, except that the trustor in the trust deed did not expressly become a party to the articles of copartnership. The copartnership was conducted under the firm name and style of Lunt Farm Company. According to the articles of copartnership, Johnson R. Lunt and Walter L. Lunt were to have charge, management, and control of all the firm property with the exception of 126 acres of land. But there is apparently a limitation upon such management and control on the part of the two partners named. Under a later paragraph of the articles of copartnership, it is provided that, in case of the death of any partner or manager, the firm shall continue to exist and be managed by the survivors of the original partners.

As part of the scheme of management, the articles of copartnership provide that the heirs and personal representatives of a deceased original partner shall become interested in the firm and at the annual settlements "may, if they desire, receive and maintain their full share of the profits, or permit them to still continue in the partnership until the time of the final dissolution." Although that is true, it is provided, nevertheless, that such heirs and legal representatives of the deceased original partner "shall not be permitted to have the active management and control of the said partnership." All such management and control, the articles continue, "shall belong to the surviving partners to this agreement." While it is true that the articles of agreement are not skillfully drawn, yet, after a careful study of the entire document, the foregoing are the undoubted provisions thereof.

After the execution of the trust deed and the articles of copartnership, the trust was executed and the partnership conducted in the manner and way contemplated. Then, on May 31, 1922, Johnson R. Lunt, a trustee and a partner, died intestate. He was survived by Kitte Lunt, his wife, and the following children and heirs at law: Arloine Lunt McCulloch, Gordon R. Lunt, and Leland Lunt. The widow and the children, with the Lunt Farm Company, Walter Lunt, and Willie C. Lunt, are the petitioners and relators in the case at bar.

Following the death of Johnson R. Lunt, his widow, Mrs. Kitte Lunt, and his children, Arloine Lunt McCulloch, Gordon R. Lunt, and Leland Lunt, petitioners and relators, on July 3, 1922, executed

three promissory notes payable to the Lunt Farm Company, a co-partnership. These notes were for the sums of $1,542.16, $2,000, and $2,000, respectively. Each instrument was payable six months after date. Because the notes were not paid, the Lunt Farm Company, as a copartnership, commenced an action to collect the same against the said Mrs. Kitte Lunt, Mrs. Arloine Lunt McCulloch, Gordon R. Lunt, and Leland Lunt, petitioners and relators, at the February, 1933, term of the Mahaska county district court. Original notices were duly served, and Mrs. Kitte Lunt, Mrs. Arloine Lunt McCulloch, Gordon R. Lunt, and Leland Lunt, petitioners and relators, appeared and filed an answer. In their answer these petitioners and relators denied liability, but alleged the existence of the copartnership and declared that they were members thereof. Then, in an amended and substituted answer, these relators pleaded "that the said copartnership (Lunt Farm Company) existed at the time the alleged notes sued upon were executed, and said notes are alleged assets of the said copartnership, and that said copartnership still exists and is a going concern engaged in farming and stock raising. That the said members of the said copartnership are Walter Lunt, Willie C. Lunt, Mattie Lunt Van Gordon (formerly Mattie Lunt Vernon), Elba Lunt Van Gordon, and these defendants (the petitioners and relators). That by reason of the premises this plaintiff (Lunt Farm Company, a copartnership) has no authority to sue these defendants (the petitioners and relators), and these defendants are not indebted to the plaintiff (Lunt Farm Company) on the notes sued upon."

Whereupon the Lunt Farm Company, a copartnership, the plaintiff in the suit on the foregoing promissory notes, amended its original petition by setting forth some of the history of the organization of the copartnership, alleging the death of Johnson R. Lunt, naming the following petitioners and relators, Mrs. Kitte Lunt, as his surviving spouse, and Arloine Lunt McCulloch, Gordon R. Lunt, and Leland Lunt, as his surviving children and heirs, and declaring that such surviving spouse and heirs claim an interest in the copartnership. So, the Lunt Farm Company, a copartnership, in its amended petition prays: "Wherefore, plaintiff (Lunt Farm Company, a copartnership) asks that the Court determine as to whether said defendants (Kitte Lunt, Arloine Lunt McCulloch, Gordon R. Lunt, and Leland Lunt) are members of said partnership, and if the Court finds them to be members that the Court determine what accounting,

if any, should be made of the partnership affairs since the 3rd day of July, 1922, and if the Court should find that any accounting of the partnership affairs should be had since said date, in order to determine the amount plaintiff is entitled to recover upon said notes, that the Court order an accounting of the partnership affairs since said date to the extent only that it may be necessary to determine the amount of judgment that should be rendered upon said notes and plaintiff (Lunt Farm Company, a copartnership) demands judgment against the defendants (the petitioners and relators), and each and all of them upon the notes described in its original petition and for the amount with interest, costs and attorney fees as prayed for in its original petition and plaintiff (the copartnership) asks for such other and further relief-consistent with the allegations of its petition as may be equitable in the premises." Attached to the amended petition is the contract of copartnership before mentioned.

On May 22, 1933, the Lunt Farm Company, a copartnership, filed in said cause a motion to transfer to equity. Apparently on the same day W. L. Lunt, Leland Lunt, W. C. Lunt, Gordon R. Lunt, Arloine Lunt McCulloch, and Mrs. Kitte Lunt, petitioners and relators in the present certiorari proceeding, filed in said cause a written dismissal. See Bardes v. Hutchinson, 113 Iowa 610, 85 N. W. 797. As 'a basis for the dismissal, it is alleged by the petitioners and relators that, because there has been no accounting between the partners, the partnership could not sue the said Mrs. Kitte Lunt, Arloine Lunt McCulloch, Gordon R. Lunt, and Leland Lunt on the three notes before mentioned. Immediately after the written dismissal was filed, the Lunt Farm Company, a copartnership, Elba Lunt Van Gordon, and Mattie Lunt Van Gordon, partners, moved the court to strike the written dismissal, just named, in an endeavor to reinstate the cause upon the court calendar for trial. It is alleged in the motion to strike that the original action on the notes was commenced with the consent and authority of the said Elba Lunt Van Gordon and Mattie Lunt Van Gordon, but that the dismissal was without their authority and without the authority of the copartnership, as such. Also it is alleged by the movants that the dismissal of the suit will be contrary to the interests of the partnership. In argument, it is pointed out that the notes will be barred by the statute of limitations if the dismissal of said cause is permitted to stand. Further, it is alleged in the motion that the dismissal of said cause was not a partnership action because those who attempted to

dismiss it had no authority to represent the firm in that regard. Consequently, on May 26, 1933, during the same term in which the said purported dismissal was filed, the district court sustained the motion to strike the dismissal, on the theory that thereby the cause was reinstated on the calendar for trial. There is no claim that this is not true. We therefore do not give consideration to that phase of the record.

It is argued, however, that the district court did not have jurisdiction or power to reinstate the cause by striking the written dismissal, because after the filing of the written dismissal the cause was in fact dismissed, and consequently no cause thereafter pended. Relying upon that theory, the petitioners, on July 6, 1933, obtained from a justice of this court a writ of certiorari commanding the respondent, the district court, through its judge, the Honorable D. W. Hamilton, to certify and return fully to this court a transcript of the records and proceedings relating to the order striking the dismissal, and reinstating the cause on the calendar.

I. If, as said by the relators, the cause was in fact dismissed with the filing of the written dismissal, then, in that event, the district court would have been without jurisdiction to set aside the dismissal under the facts in this record. No claim is made that there was any basis for setting aside the dismissal, except, as before said, for the lack of authority in those who attempted to make the dismissal. Section 11562 of the 1931 Code provides:

"An action may be dismissed, and such dismissal shall be without prejudice to a future action: 1. By the plaintiff, before the final submission of the case to the jury, or to the court when the trial is by the court."

We had occasion to consider this section of the statutes in Ryan v. Phoenix Insurance Co., 204 Iowa 655, 215 N. W. 749, 750. Reading on page 656 of that opinion, we said:

"The right of the plaintiff to dismiss his cause of action at any time before the final submission thereof to the jury, or to the court when the trial is without a jury, is conferred by section 11562, Code 1924 [a similar section in the 1931 Code], and is absolute. Ordinarily, the effect of such dismissal is final and terminates the jurisdiction of the court thereof."

To the same effect, see Chicago, Rock Island & Pacific Ry. Co.

v. Dey, 76 Iowa 278, 41 N. W. 17; Kiser v. Crawford, 182 Iowa 1249, 166 N. W. 577.

In the case at bar, however, a copartnership was the plaintiff in the action pending in the Mahaska county district court. This copartnership had commenced that action. While a copartnership is a legal entity in Iowa (section 10983, 1931 Code; Jensen v. Wiersma, 185 Iowa 551, 170 N. W. 780, 4 A. L. R. 298; Van Dyk v. Mosterdt, 171 Iowa 3, local citation, 17, 153 N. W. 206), yet the entity only can act through its representatives. It was said, in Van Dyk v. Mosterdt (171 Iowa 3) supra, reading on page 16:

●  "The members of the firm [partnership firm] are simply the agents of the entity, and can only bind it within the scope of their legal authority as such agents."

The notes sued upon in the present controversy were the property of the copartnership. Therefore, the copartnership was the real party in interest. Because of that fact it alone could bring the suit, and it alone could dismiss it. See, generally, 20 Ruling Case Law, p. 920, sec. 132, under VI; Van Dyk v. Mosterdt (171 Iowa 3, 153 N. W. 206), supra.

When dismissing its suit, as before indicated, the copartnership necessarily had to act through its representatives. Unless the representatives who purported to act for the partnership had authority so to do, the result would not be a partnership action. Before a partnership action can be accomplished, the representatives acting for the entity must be authorized to produce the result. Without such authority, the attempt to bring about a partnership action never will ripen into a reality. Under the record, then, it is important now to consider whether the relators who filed the written dismissal were authorized so to do.

Apparently by mutual consent the case is presented upon the theory that the deed of trust and articles of copartnership are a part of the respondent's return. According to the theory of the presentation, the jurisdiction of the district court is to be determined from these documents. Therefore, we dispose of the jurisdictional questions by considering the deed of trust and the articles of copartnership. Whether certiorari is the proper remedy, we do not decide. The respondent raises no issue as to that.

It is argued by the relators that at least W. L. Lunt had authority to dismiss the suit because he was the sole manager in con-

trol of the partnership property under the articles of copartnership before mentioned. While it is true that the articles of copartnership declared that Johnson R. Lunt and Walter L. Lunt "shall have charge of, and manage and control all the property", etc., yet the instrument does not, when read as a whole, thus authorize the survivor of the two managers. Johnson R. Lunt, as before stated, is now dead, and Walter L. Lunt survives him. As before stated, the partnership agreement makes provision for this situation. It is provided therein that, in case of the death of a partner or manager, the firm shall continue to exist and be managed by the surviving partners. There is an express provision that the representative of such deceased partner shall not have active management or control of the partnership. Apparently, for the purpose of emphasis, the same paragraph ends as it began, by declaring that the management and control in the event under consideration shall belong to the surviving partners. A careful reading of the entire agreement, therefore, compels the conclusion that the partners were willing for Johnson R. Lunt and Walter L. Lunt to manage the partnership business while they both lived, but, in the event one of them should die, it appears that the remaining partners then desired to have control. Nothing appears, therefore, in the contracts and matters of record to indicate, as claimed by the petitioners and relators, that Walter L. Lunt had authority to manage and control the partnership business at his own discretion. He therefore had no right, under the circumstances, to dismiss the suit without the consent of the partners. Obviously the relators who were defendants in the suit on the notes would have no authority to dismiss the proceedings. They were interested adversely to the Lunt Farm Company, the copartnership which brought the action. Moreover, these particular relators, as before indicated, were the wife and surviving children of Johnson R. Lunt, deceased. The articles of copartnership, as before suggested, expressly provide that such representatives of the deceased partner shall have no active control or management of the partnership affairs. Therefore, the only partners who signed the dismissal who had anything to say about the management or control of the entity were Walter L. Lunt and W. C. Lunt. Elba Lunt Van Gordon and Mattie Lunt Van Gordon, who joined with the partnership in setting aside the dismissal, authorized the original suit, but were not consulted concerning, and were not parties to, the dismissal. These partners had a right to object to the dismissal because they were interested in the partner-

ship. The copartnership owned the notes sued upon, and resultantly Elba Lunt Van Gordon and Mattie Lunt Van Gordon were interested in the notes to the extent of their interests in the copartnership.

Manifestly the copartnership would be prejudiced by a dismissal of the suit, for an action on the notes apparently would be barred in the event the suit were dismissed. So far as indicated by the record, Elba Lunt Van Gordon and Mattie Lunt Van Gordon, who asked to have the dismissal stricken, are on a par in the management of the partnership affairs with Walter L. Lunt and W. C. Lunt. Cole R. Van Gordon, who, as trustee, signed the partnership agreement, did not authorize the dismissal, and, if he has any management of the partnership affairs, a majority of the partners are opposed to the dismissal. At least, considering the record in the best light for the relators, half of the managing partners were opposed to the dismissal. Not only were the relators unauthorized to dismiss the suit, but their action in so doing would result in prejudice and loss to the copartnership. In view of the fact that the makers of the notes joined in the dismissal, it would appear that the relators joined in a united attempt to injure the partnership and thereby serve some purpose of their own. Because the relators, in attempting to dismiss the suit, acted without authority, their conduct did not amount to a partnership action.

Consequently the suit in fact was not dismissed, and the district court acted within its power, authority, and jurisdiction when striking the purported dismissal.

II. But it is said that the suit was not legally brought, and therefore the dismissal was justified because the firm cannot sue a partner until there has been an accounting. See Dolan v. McManus, 209 Iowa 1037, 229 N. W. 687. Whether this would be a basis for certiorari, we do not now decide. Although not deciding whether certiorari will lie at this juncture, however we continue the discussion on the petitioners' argument.

"It is a well-recognized exception to the rule contended for [the one just stated] that, where the liability has been made the subject of an express contract, or has been segregated from the partnership business, an action at law by one partner against another may be maintained thereon without a settlement, or an accounting of the partnership business." In re Estate of Talbott, 200 Iowa 585, local citation, pages 590, 591, 203 N. W. 303, 306.

Apparently, in recognition of these rules, the plaintiff partnership in the suit on the notes amended its petition by pleading matters justifying an accounting between the partners. Basing its prayer for relief thereon, the partnership, as plaintiff in that suit, asked that it be determined who were the members of the firm, that an accounting between them be had, as provided by the articles of copartnership, and for general equitable relief. Following that amendment and prayer, the partnership, as plaintiff, moved to transfer the cause to equity. There was no objection to the motion to transfer to equity by the defendants in the suit on the notes. Undoubtedly, then, the cause would have been transferred had the relators not filed their purported dismissal. Under all the circumstances, therefore, it cannot be said that the district court acted without jurisdiction or power in the premises.

Wherefore, the writ issued is annulled, the petition therefor is dismissed, and the order of the respondent court is affirmed.

Writ annulled, petition dismissed, and the order of the respondent affirmed.

ALBERT, C. J., and EVANS, CLAUSSEN, and DONEGAN, JJ., concur.